IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STERLING SAVINGS BANK, a Washington stock savings bank, | Civ. No. 09-555-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| SEQUOIA CROSSING, LLC, an Oregon limited liability company, SEQUOIA CUSTOM HOMES, LLC, an Oregon limited liability company, ZEUS HOLDINGS, LLC, an Oregon limited liability company, BRIAN SNODGRASS, and DARCY SNODGRASS, | |
| Defendants. | |

_____
ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Sterling Savings Bank ("Sterling") moves for an award of attorney fees and costs following a stipulated judgment between Sterling and Defendants Sequoia Crossing,

Sequoia Custom Homes, Zeus Holdings, and Brian and Darcy Snodgrass (collectively "Defendants"). Sterling requests compensation in the amount of $36,100 in attorney fees and $8,509.98 in costs. Defendants do not oppose Sterling's request. Exercising its duty to independently review Sterling's fee request, the court recommends an award to Sterling of attorney fees in the amount of $29,038.20, and costs in the amount of $8,443.58.

*Background*

This case arises from a series of loans made in 2006 and 2007 by Sterling Savings Bank to Defendants. On December 21, 2006, Sterling agreed to loan $9,328,000 to Sequoia Crossing. In turn, Sequoia Crossing delivered to Sterling a trust deed on certain real property in Clackamas County, Oregon. The same day, Brian and Darcy Snodgrass delivered a guaranty to Sterling guaranteeing all sums owed Sterling by Sequoia Crossing. Then, on March 15, 2007, Sterling loaned $1,000,000 to Brian and Darcy Snodgrass via promissory note. On April 9, 2007, Sterling loaned $15,645 to Sequoia Custom in exchange for a personal property security interest in a Ford van.

In 2009, Sterling commenced litigation against Defendants, claiming (1) breach of the March 15, 2007, promissory note for the amount of $892,485 together with accrued interest and fees, (2) breach of the December 21, 2006, guaranty for the sum of $4,573.540.51 together with accrued interest and fees, or (3) judicial foreclosure of the December 21, 2006, trust deed for real property in Clackamas County in the event of nonpayment, (4) foreclosure of the Ford van, and (5) claim and delivery of the van. (Pl.'s First Am. Compl. at 1-7.) Sterling also requested that the court appoint a receiver to manage the real property. *Id.*

On February 19, 2010, Sterling and Defendants agreed to a stipulated judgment whereby Sterling was awarded the following: A money judgment for the $892,485 together with accrued interest and fees, stemming from its first claim; a money judgment of $4,044,822.11 together

with accrued interest and fees and less amounts received from short sales, stemming from its second claim; foreclosure of the real property, stemming from its third claim; and costs and attorney fees for its first, second, and third claims. (Stipulated J. at 1-4.) The remainder of Sterling's claims were dismissed, and the court did not appoint a receiver for the real property. *Id.*

Sterling moves for an award of attorney fees and costs pursuant to the attorney fees stipulations in its agreements with Defendants and Federal Rule of Civil Procedure 54. Sterling employed the services of Greene and Markley, P.C., and specifically in that firm attorneys Charles Markley ("Markley"), Sanford Landress ("Landress"), David Foraker ("Foraker"), Gary Blacklidge ("Blacklidge"), and M. Elizabeth Duncan ("Duncan"), as well as paralegals Debra Johnson ("Johnson"), Mena Ravissipour ("Ravissipour"), Carrie Evans ("Evans"), and Nancy Andersen.[1] (Landress Declaration ("Decl.") 4.) Sterling requests the following compensation: 9.5 hours of Markley's time at a rate of $400 per hour, or $3,800; 79.9[2] hours of Landress' time at a rate of $300 per hour, or $23,970; 14.8 hours of Blacklidge's time at a rate of $295 per hour, or $4,366[3]; 0.4 hours of Foraker's time at $425 per hour, or $170; 3.2 hours of Duncan's time at a rate of $275, or $880; 3.3 hours of Johnson's time at $75 and $85 per hour, or $262.50[4]; 1.4 hours of Ravissipour's time, or $140.00; and 15.7 hours of Evans's time at $160 per hour, or

---

[1]Sterling does not request compensation for Andersen's time.

[2]There appears to be an error in Sterling's calculations, which report 80.2 hours.

[3]There appears to be an error in Sterling's calculations, which report $4,365.50.

[4]Johnson worked for 1.8 hours at $75 per hour, and 1.5 hours at $85 per hour. There appears to be an error in Sterling's calculations, which report that Johnson worked for only 2.8 hours for a total of $220. Review of the time sheets indicates that Johnson worked for 3.3 hours, 1.8 hours at $75 per hour and 1.5 hours at $85 per hour, for a total of $262.50.

$2,512. *Id.* Sterling thus seeks $36,100[5] in attorney fees. *Id.* In addition to attorney fees, Sterling requests $8,509.98 in costs. Sterling's cost bill and attorney fees combined total $44,609.98.[6] *Id.*

## *Discussion*

Sterling is entitled to attorney fees pursuant to its contracts and stipulated judgment with Defendants, and Defendants do not oppose this motion for costs. Even so, the court must independently determine the amount of attorney fees and costs to which Sterling is entitled. *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993). The court must first determine whether to award Sterling for time spent litigating unsuccessful claims. Then, it must examine the reasonableness of Sterling's fee request under Oregon's attorney fee statute, ORS 20.075.

I.    Successful versus Unsuccessful Claims

In its First Amended Complaint, Sterling alleged five claims against Defendants. In the Stipulated Judgment between the parties, Sterling won favorable judgments on three of those claims, while the remainder were dismissed. The Stipulated Judgment awarded Sterling attorney fees only for its successful claims. The applicable rule in Oregon is as follows:

> "When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims."  When claims involve common legal issues, the court need not apportion fees, because "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims."

*Alexander Mfg., Inc. Employee Stock Ownership and Trust v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1179-1180 (D. Or. 2010) (quoting *Bennet v. Baugh*, 164 Or. App. 243, 247, 248-249, 990

---

[5]Sterling requests $36,057.50. The court has modified the number to include Johnson's uncounted 0.5 hours.

[6]Sterling requests $44,567.48. The court has modified the number to include Johnson's uncounted 0.5 hours.

OPINION AND ORDER                              4                                 {DEB}

P.2d 917, 920-921 (1999)). Here, Sterling tried to collect on a series of loans it made to Defendants – interrelated individuals and business entities – during 2006 and 2007. All of Sterling's claims involved the same legal issues: breach of promissory note, breach of guaranty, and Sterling's right to foreclosure and recovery of collateral for the loans made via those instruments. Furthermore, Sterling's unsuccessful claims, those involving a Ford van and a receivership, comprised such a small fraction of its lawsuit that Sterling likely would have incurred the same amount of fees even if it had not sued on its unsuccessful claims. Therefore, the court finds that the claims have involved common issues and, thus, it need not apportion attorney fees between Sterling's various claims. Accordingly, the court awards fees without reduction for Sterling's unsuccessful claims.[7]

II.     Reasonableness of an Attorney Fee Request Under Oregon Law

When a party in a diversity action requests attorney fees, the court analyzes the party's fee request under ORS 20.075. *Oglesby v. W. Stone & Metal Corp.*, No. CV 99-492-BR, 2001 WL 34045884 at *1 (D. Or. Sept. 20, 2001). ORS 20.075 includes two subsections, ORS 20.075(1) and 20.075(2), both of which list factors to be considering in analyzing a fee request. The factors under ORS 20.075(1) relate primarily to parties' behavior during litigation, while the factors under ORS 20.075(2) relate primarily to the quality of the legal services at issue. In *Oglesby*, Judge Brown characterized the fee request analysis under ORS 20.075 as follows:

> Section 20.075 mandates a two step inquiry. First, under § 20.075(1), a court must consider eight nonexclusive factors when deciding whether an award for attorneys' fees is warranted. If the court elects to award attorneys' fees pursuant to § 20.075(1), § 20.075(2) then requires the court to consider the

---

[7]The court notes that Sterling's attorneys expended time in the process of selling foreclosed real property. (Landress Decl. 3). The court compensates Sterling for this expense of time, given its contractual right to recover for expenses incurred in its effort to collect amounts owed to it by the Defendants. (Landress Decl., Ex. 1 at 2, Ex. 2 at 2, Ex. 3 at 8 ¶12.)

> factors identified in subsection (1) together with the eight factors set forth in subsection (2) when deciding the amount of any such award. A court satisfies the requirements of § 20.075 by including in its order a brief description of or citation to the factors on which it relied when granting or denying an award of attorneys' fees.

*Id.* (citations omitted). Here, the court is satisfied that an attorney fee award is warranted. Therefore, the court must consider the factors under ORS 20.075(1) and 20.075(2) to determine the reasonableness of Sterling's fee request.

### A.   Factors Under ORS 20.075(1)

In assessing the reasonableness of a fee request, ORS 20.075(1) requires courts to consider the following factors:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith, or illegal.
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
> (g) The amount the court has awarded as a prevailing party fee under ORS 20.190.
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

ORS 20.075(1).

In this case, the majority of the above factors are either neutral or irrelevant. Factors (a) and (b) have no bearing on the case, since there were no unreasonable claims made, nor allegations of reckless, willful, illegal, or malicious conduct. Sterling merely made loans to Defendants, Defendants defaulted, and Sterling attempted to recover. Factor (c) is no barrier to

an award, since awarding attorney fees is merely enforcing the loan contracts and stipulated judgment agreed to by the parties. Factors (d) and (g) are irrelevant; neither party asserted meritless claims or defenses and the court did not award a prevailing party fee under ORS 20.190. Factor (e) is neutral, since the court is unaware of any lack of reasonableness or diligence of the parties and their attorneys during the proceedings. Factor (f) is not relevant. In the Landress Declaration, attorney Landress suggests that Sterling would have preferred to settle the case in August 2009, but was unable to do so because of Defendants' resistance. (Landress Decl., at 2-3.) According to Landress, Defendants' document requests and opposition to Sterling's motion for summary judgment needlessly prolonged litigation, delaying the stipulated judgment by several months. *Id.* Defendants do not contest this description of the parties' litigation. Therefore, factor (f) supports an award of attorney fees. Finally, Sterling raises no additional considerations relevant under factor (h).

  B.  *Factors Under ORS 20.075(2)*

ORS 20.075(2) requires the court to consider the following factors:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
(c) The fee customarily charged in the locality for similar legal services.
(d) The amount involved in the controversy and the results obtained
(e) The time limitations imposed by the client or the circumstances of the case.
(f) The nature and length of the attorney's professional relationship with the client.
(g) The experience, reputation and ability of the attorney performing the services.
(h) Whether the fee of the attorney is fixed or contingent.

ORS 20.075(2). Several of the ORS 20.075(2) factors are not relevant to this case. Sterling makes no arguments concerning factors (b), (e), and (f), and the court discerns no reason why these factors affect Sterling's fee award. Sterling suggests that the court pay particular attention

to the skill of its attorneys, fees customarily charged in the locality, the amount involved in the controversy, the experience and reputation of its attorneys, and whether the fee is fixed or contingent. (Landress Decl., at 5.) Thus, Sterling claims that factors (a), (c), (d), (g), and (h) are relevant to the court's consideration of Sterling's fee request. However, factor (h) is of no bearing because Sterling's attorneys billed at fixed hourly rates. *Alexander Mfg., Inc. Employee Stock Ownership and Trust v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1183 (D. Or. 2010). The remaining factors will be analyzed below.

      i.    Time and Labor Required, Novelty and Difficulty of Questions Involved, and Skill Needed to Properly Perform Legal Services

Sterling does not argue that there were any complicated issues in this case, and the record demonstrates none. The case involved relatively uncomplicated issues surrounding some unpaid loans and the foreclosure of collateral. Filings were few and not lengthy. Therefore, the court will not consider this factor in its determination of the reasonableness of Sterling's fee request.

Although Sterling provides the court with no direct evidence concerning the skill or expertise of its attorneys, the record provides the basis for an inference to some extent of the attorneys' degree of skill: Sterling's attorneys have years of experience in their fields of practice, a fact that helps explain the efficiency with which they completed tasks, and timely so. Given the lack of direct evidence of the attorneys' skill, however, the court can give this factor only limited consideration in determining the reasonableness of Sterling's fee request.

On the other hand, the court must scrutinize the billing entries submitted by Sterling's attorneys in order to determine whether the expenditures of time were reasonable and sufficiently documented so as to merit compensation. Upon review of the record, the court disallows a number of the hours recorded on Sterling's attorneys' time sheets are as

unreasonable or inadequately documented.  For the reasons set forth below, the court finds that the evidence submitted by Sterling supports an award of compensation for 6.7 hours of Markley's time, 67.39 hours of Landress' time, 12.86 hours of Blacklidge's time, none of Foraker's time, 3.2 hours of Duncan's time, 3.3 hours of Johnson's time,  none of Ravissipour's time, and 15 hours of Evans's time.

Defects in the billing entries include the failure to adequately specify the nature of the attorneys' tasks, duplicative expenditures of time billed to more than one attorney for performing the same task, block billing of multiple tasks, and time billed inappropriately for clerical tasks.  The court will take up each category of the defective entries in turn.  While several of the time entries suffer from multiple defects, to the extent that entries have already been excluded the court will not further discuss those entries

      *a.*  *Block Billing*

Sterling's attorneys frequently grouped together multiple tasks into single blocks of time. This practice is in direct contravention of the court's instruction that "members of the bar record time on particular individual tasks and support their fee petition with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task." Message From The Court Regarding Attorney Fee Petitions, (last updated Feb. 19, 2009) available at http://ord.uscourts.gov/examples-and-guidelines/local-forms/examples-and-guidelines/attorney-fee-statement-guidelines/details. Where a substantial amount of time is billed for  a variety of tasks, the court cannot examine the reasonableness of each task. *Frevach v. Multnomah County Dept. Of Envtl. Servs.*, No. CV-99-1295-HU, 2001 WL 34039133, at *12 (D. Or. Dec. 18, 2001).
 However, while billing periods of three hours or more may be subject to exclusion, the court is

more lenient with smaller blocks of time, which it may divide by the total number of included tasks in order to find the length of time required for each individual task. *Id.*

Here, Sterling's attorneys did engage in block billing, but largely confined this practice to blocks of time around or under three hours. While the court will not strike these entries entirely, it must determine a quantity of time billed for each task. In order to determine the billed time of each individual task this court follows *Frevach* and divides these blocks of time by the total number of included tasks. The result is the amount of time that will be analyzed by the court in determining the reasonableness of each task. For example, on May 1, 2009, attorney Blacklidge engaged in email communication with various persons, for which he listed six tasks and billed 1.6 hours. (Landress Decl., Ex. 4 at 1.) In analyzing Blacklidge's tasks for that day, the court will consider each task to have taken 0.27 hours.

### b. *Inadequately Specified Tasks*

File 6730-000 of time sheets, submitted to the court as Exhibit 4 to the Landress Declaration in support of Sterling's fee petition, suffers from the repeated failure by Sterling's counsel to adequately describe their tasks. This court has explicitly warned attorneys that the failure to explain the subject matter of a task "makes it nearly impossible to assess the reasonableness of the requested time" and that such time entries may be disallowed. Message From The Court Regarding Attorney Fee Petitions; *Whitworth v. Nat'l Enter. Sys.*, No. CV 08-968-PK, 2010 WL 1924505, at *7 (D. Or. April 21, 2010).

Here, Sterling submitted a substantial number of time entries in which attorneys are described to have exchanged emails, held conferences, or "analyzed," but that included no mention of the subject matter of their activities. Also, frequent use is made of the abbreviation

"re" followed by blank space, leaving the court without an explanation of the task's purpose. For example, attorney Blacklidge's first entry in file 6730-000 reads: "Review e-mail and send e-mail to Cindy Larvick." The following entry reads: "Review e-mail from and send e-mail to Cindy re." (Landress Decl., Ex. 4 at 1.)[8] Therefore, the court excludes from the fee award the following tasks, accounting for 11.21 hours of attorney Landress' time, all of attorney Foraker's time, 1.94 hours of attorney Blacklidge's time, and 2.7 hours of attorney Markley's time:

| Task | Attorney | Hours Claimed (Total Hours/ total number of Tasks) | Date | Page |
|---|---|---|---|---|
| Review and send e-mail to Cindy Larvick | GLB | 0.27 (1.6/6) | 05/01/09 | E4, 1/14 |
| Review and e-mail from and send e-mail to Cindy re | GLB | 0.27 (1.6/6) | 05/01/09 | E4, 1/14 |
| Office Conference with Sanford Landress re | GLB | 0.2 | 05/04/09 | E4, 1/14 |
| Office Conference with Gary Blacklidge re | SRL | 1.6 | 05/04/09 | E4, 1/14 |
| Conference re | GLB | 0.1 | 05/08/09 | E4, 1/14 |
| Office Conference with Gary Blacklidge re | SRL | 0.53 (1.6/3) | 05/08/09 | E4, 1/14 |
| Review and Analyze | SRL | 0.53 (1.6/3) | 05/08/09 | E4, 1/14 |
| Analyze | SRL | 0.53 (1.6/3) | 05/08/09 | E4, 1/14 |
| Review email from Van White re | GLB | 0.1 | 05/11/09 | E4, 1/14 |
| Review email from and send email to Van White re | GLB | 0.2 (0.4/2) | 05/12/09 | E4, 1/14 |
| Send email to Cindy re | GLB | 0.2 (0.4/2) | 05/12/09 | E4, 1/14 |
| Receive and Review Check for Portland Carpet Centre | GLB | 0.25 (0.5/2) | 05/15/09 | E4, 1/14 |
| Correspondence to Van White re | GLB | 0.25 (0.5/2) | 05/15/09 | E4, 1/14 |
| Review correspondence from Gary Blacklidge to E Salvati re | SRL | 0.30 (0.9/3) | 05/20/09 | E4, 1/14 |
| Analyze | SRL | 0.30 (0.9/3) | 05/20/09 | E4, 1/14 |
| Office conference with Gary Blacklidge re | SRL | 0.30 (0.9/3) | 05/20/09 | E4, 2/14 |
| Conference re | CRM | 0.30 (0.6/2) | 07/02/09 | E4, 4/14 |

---

[8]The court notes that it is capable of determining the subject matter of some vague time entries by looking at surrounding entries on the same page. Where the court can readily determine the subject matter it will allow for compensation.

| | | | | |
|---|---|---|---|---|
| Prepare outline re | CRM | 0.30 (.0.6/2) | 07/02/09 | E4, 4/14 |
| Office Conference with Charles Markley re | SRL | 0.23 (0.9/4) | 07/02/09 | E4, 4/14 |
| Analyze | SRL | 0.23 (0.9/4) | 07/02/09 | E4, 4/14 |
| Email to A Kennedy re same | SRL | 0.23 (0.9/4) | 07/02/09 | E4, 4/14 |
| Email to C Larvick re | SRL | 0.23 (0.9/4) | 07/02/09 | E4, 4/14 |
| Review correspondence from C Larvick re | SRL | 0.1 | 07/06/09 | E4, 4/14 |
| Email from C Larvick re | SRL | 0.1 | 07/07/09 | E4, 4/14 |
| Email from Charles Markley and Respond to same | SRL | 0.2 | 07/08/09 | E4, 4/14 |
| Email to A Kennedy re same | SRL | 0.2 | 07/08/09 | E4, 4/14 |
| Analyze | SRL | 1.1 | 07/10/09 | E4, 4/14 |
| Exchange emails with C. Larvick re | SRL | 0.2 | 09/24/09 | E4, 7/14 |
| Email from C Larvick re | SRL | 0.1 | 09/30/09 | E4, 7/14 |
| Telephone Call from Rick Tine | GLB | 0.1 | 10/02/09 | E4, 8/14 |
| Office Conference with Charles Markley, Gary Blacklidge and R Tine re | SRL | 0.5 | 10/06/09 | E4, 8/14 |
| Exchange emails with R tine | SRL | 0.1 | 10/09/09 | E4, 8/14 |
| Email from R Tine re; Email to J Thomas re; Telephone Call from R tine re | SRL | 0.4 | 11/03/09 | E4, 9/14 |
| Locate | SRL | 0.15 (0.3/2) | 11/04/09 | E4, 9/14 |
| Email to R Tine re | SRL | 0.15 (0.3/2) | 11/04/09 | E4, 9/14 |
| Telephone call from R Tine re | SRL | 0.2 | 12/08/09 | E4, 11/14 |
| Work on; Review; Conference re | CRM | 2.1 | 01/06/10 | E4, 12/14 |
| Email to C Larvick re | SRL | 0.1 | 01/07/10 | E4, 12/14 |
| Telephone conference with R Tine re; review; Telephone call from R Tine, Emails to R tine re | SRL | 1 | 01/11/10 | E4, 12/14 |
| Receive and Review email from Orozco to R Tine re; Telephone conference with R Tine, C Larvick and K Robbins re | SRL | 0.3 | 01/12/10 | E4, 12/14 |
| Office Conference with Sanford Landress re | DAF | 0.4 | 01/22/10 | E4, 12/14 |
| Office conference with David Foraker | SRL | 0.4 | 01/22/10 | E4, 12/14 |
| Email to C Larvick and R Tine re | SRL | 0.2 | 01/25/10 | E4, 12/14 |
| Email from E Orozco re | SRL | 0.35 (1.4/4) | 01/26/10 | E4, 12/14 |
| Draft email to E Orozco | SRL | 0.35 (1.4/4) | 01/26/10 | E4, 12/14 |

//

//

//

//

OPINION AND ORDER                    12                                    {DEB}

c.   *Duplicative Expenditures*

In *Whitworth*, Magistrate Judge Papak explained:

> The courts of this district routinely exclude from the [attorney fee] calculation any time entries indicating that more than one lawyer performed the same task . . . . "When attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill the conference to the client, not both attorneys. The same good 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral arguments."

*Whitworth*, 2010 WL 1924504 at *6 (quoting *Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 U.S. Dist. LEXIS 763, *14 (D. Or. Feb. 8, 2001)); *See also Malbco Holdings, LLC v. AMCO Ins. Co.*, No. CV-08-585-ST, 2010 WL 2572849 at *12 (D. Or. June 22, 2010) ("[H]aving more than one attorney involved in the case, which necessitates a certain amount of attorney conferencing, while understandable, makes it unreasonable to shift the charges for both attorneys to the other party."). Scrutiny of the time records submitted in support of Sterling's fee motion reveals that both attorney Landress and paralegal Evans billed time for conferences they held on January 19, January 25, and February 1, 2010. (Landress Decl., Ex. 5 at 14, 16.) It is "always inappropriate to tax an opposing party with such duplicative expenditures." *Id.* Therefore, Evans's time entries for January 19, January 25, and February 1, 2010, totaling 0.7 hours, will be excluded from the fee award.

d.   *Clerical Tasks*

Both attorneys and paralegals engage in tasks that require a certain level of legal expertise, and hours spent on these tasks are reimbursable. *Atl. Recording Corp. v. Andersen*, No. CV 05-933-AC, 2008 WL 2536834, at *10 (D. Or. June 24, 2008). However, "[c]osts associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable." *Whitworth*, 2010 WL

1924504, at *7. Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents. *Id.*; *Frevach*, 2001 WL 34039133, at *12. Here, Sterling's attorneys included several time entries which consist of clerical tasks. For example, paralegal Ravissipour's time entries for July 27, 2009, appear to deal exclusively with organizing files. (Landress Decl., Ex. 4 at 5.) Because clerical tasks are not reimbursable, the following time entries will be excluded from the fee award: paralegal Ravissipour's entries for July 27, 2009, totaling 1.4 hours; attorney Markley's time entry for May 21, 2009 "file complaint," amounting to 0.1 hours; attorney Landress' time entry for July 23, 2009, his time entry for August 17, 2009, his time entries for September 24, 2009, his time entry for October 23, 2009, and his first time entry for January 4, 2010, totaling 1.3 hours.

        ii.     The Fee Customarily Charged in the Locality for Similar Legal Services

            a.     *Attorney Rates*

"The law is well established that the reasonable rate for legal services is 'to be calculated according to the prevailing market rates in the relevant community'" *Atl. Recording Corp.*, 2008 WL 2536834, at *13 (quoting *Blum v. Stetson,* 465 U.S. 886, 895 (1984)). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community. . . ." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

The "bellweather" of attorney rates used by this court is the Oregon State Bar 2007 Economic Survey ("Economic Survey"). *Atl. Recording Corp.*, at 14 (quoting *McElmurry v. U.S. Bank Nat'l Assoc.*, No. CV 04-642-HA, 2008 WL 1925119, at *3 (D. Or. April 30, 2008).

This court uses the Economic Survey's "Hourly Billing Rate by Total Years Admitted to Practice" chart to find a reasonable rate based on an attorney's years of practice, and does not award higher rates without some justification for doing so. *Id.* at 15. Here, Landress's declaration provides no justification for deviating from the Economic Survey, and the court will therefore apply the Economic Survey in determining reasonable rates for Sterling's attorneys

Two of Sterling's attorneys, Blacklidge and Landress, have practiced for 20 and 29 years, respectively. (Landress Decl. at 1-2.) Blacklidge claims an hourly rate of $295, while Landress claims an hourly rate of $300. According to the Economic Survey, the median hourly billing rate of an attorney with 16-20 years of experience is $275 while attorneys at the 75th percentile bill at $325 per hour. The median and 75th percentile hourly billing rates of attorneys with 20-30 years of experience are the same, at $275 and $325 per hour. Because both Blacklidge and Landress bill at rates that are near the 2007 median, the court accepts their claimed hourly rates as reasonable. While Sterling provides no information about attorney Duncan's experience that would support her claimed fee of $275 an hour, the court accepts her claimed hourly rate of $275 as reasonable because her admittance to the bar in 1987 indicates she has more than 20 years of experience. Oregon State Bar Membership Directory, http://osbar.org/members/display.asp?b=872092 (last visited July 9, 2010).

However, one of Sterling's attorneys, Markley, with 35 years of experience, claims $400 per hour. (Landress Decl. at 2). According to the Economic Survey, the median hourly billing rate of an attorney with over 30 years of experience is $300, while attorneys at the 75th percentile bill at $350 per hour. Sterling provides no evidence upon which the court may find that Markley should be paid such a high hourly rate. Absent any evidence why Markley should

be paid so far above the median, the court will award him attorney fees of $300 per hour.[9]

### b. Paralegal Rates

Sterling requests a rate of $160 per hour for paralegal Evans. This rate is considerably higher than the rate of $75 and $85 charged by paralegal Johnson, and Sterling provides no evidence of Evans's training or experience to support such a high rate. The court has lowered applicants' requested paralegal rates where applicants have failed to provide evidence as to paralegals' training and experience. *See eg. Whitworth*, 2010 WL 1924504, at *11 (reducing paralegal rate from $130 to $90); *Atl. Recording Corp.*, 2008 WL 2536834, at *16 (reducing paralegal rate from $150 to $120); *Van Dyke v. BTS Container Service*, No. CV 08-561-KI, 2009 WL 2997105, at *2 (D. Or. Sept. 15, 2009) (reducing unopposed paralegal fee from $125 to $100). On the other hand, the court has awarded unopposed paralegal rates of $125 per hour. *See eg. Salinas*, 2010 WL 1027529, at *9; *Megavail Inc. et al v. Ill. Union Ins. Co.*, No. CV 05-1374-AS, 2007 WL 3232605, at *4 n. 2 (D. Or. Nov. 1, 2007). Here, because Sterling provides no evidence of Evans's training or experience, the court lowers Evans's rate to $125 an hour. Furthermore, absent any evidence to the contrary, the court finds that Johnson's hourly rate of $75 and $85 dollars is reasonable.

### iii. The Amount Involved and The Results Obtained

Sterling sued for the recovery of over five million dollars owed by Defendants. Sterling enjoyed substantial success, obtaining the right to recover almost the entirety of that sum in money judgments and collateral via foreclosure. Therefore, Sterling's award need not be

---

[9]The court notes that Sterling's attorneys do not request that inflation be taken into account in determining their hourly rate. Therefore, the court will not adjust the Economic Survey billing rates for inflation *sua sponte* in determining reasonable fees.

adjusted downward. Sterling's success in litigation supports the award of attorney fees as calculated below.

III.   Calculation of Attorney Fee Award

The product of the 67.39 hours expended by attorney Landress and his reasonable hourly rate of $300 is $20,217. The product of the 12.86 hours expended by attorney Blacklidge and his reasonable hourly rate of $295 is $3,793.70. The product of the 6.7 hours expended by attorney Markley at his reasonable hourly rate of $300 is $2,010. The product of the 3.2 hours expended by attorney Duncan at her reasonable hourly rate of $275 is $880. The product of the 3.3 hours expended by paralegal Johnson at her reasonable hourly rate of $75 and $85 is $262.50. The product of the 15 hours expended by paralegal Evans at her reasonable hourly rate of $125 dollars is $1,875. Thus, the attorney fee calculation results in a total of $29,038.20, and the court awards Sterling that amount in fees.

IV.   Costs

Along with attorney fees, Sterling requests compensation in the amount of $8,509.98 for costs incurred in its effort to recover the money owed by the defendants. The costs include a foreclosure guarantee, filing fees, hearing fees, service fees, use of Pacer, Westlaw charges, certified mail, and photocopies.

The cost of the foreclosure guarantee is awarded to Sterling pursuant to its guaranty with Defendants, which provides that Defendants will pay "all other costs" incurred by Sterling as a consequence of default. (Landress Decl., Ex. 3 at 8 ¶12.) In addition, the court awards Sterling its costs for filing, hearing, service, and Pacer fees. The court finds these costs reasonable and has no reason to question their validity. Furthermore, the court awards Sterling its costs for certified mail and Westlaw. These charges are recoverable if billed to clients separately. *Atl.*

*Recording Corp.*, 2008 WL 2536834 at *19. Here, these charges were billed separately. (Landress Decl., at 5.) Absent any argument otherwise, the court finds that they are recoverable.

Finally, however, the court denies Sterling's claim for $66.40 in copying charges. Sterling's attorneys present their copying charges without identifying the purposes for which the copies were made. (Landress Decl., at 5). Courts in this district have refused to award copying costs where attorneys fail to clarify what portion of the copying fees was necessarily obtained for use in the case and what portion was used merely for the attorneys' convenience. *See, e.g., Kyei v. Or. Dept. of Transp.*, No. CV 07-1607-AC, 2010 WL 935489, at *4-5 (D. Or. March 11, 2010); *Atl. Recording Corp.*, at 20; *Symantec Corp. v. CD Micro, Inc.*, No. CV 02-406-KI, 2005 WL 1972563, at *5 (D. Or. Aug. 12, 2005). Therefore, the court subtracts $66.40 from Sterling's cost bill and awards Sterling $8,443.58 in costs.

## *Conclusion*

Based on the foregoing, Sterling's Motion for an Award of Attorneys' Fees and Costs is GRANTED, in part, and DENIED, in part as follows: The court awards Sterling attorney fees in the amount of $29,038.20 and costs in the amount of $8,443.58.

DATED this 11th day of August, 2010.

        /s/ John V. Acosta
        JOHN V. ACOSTA
        United States Magistrate Judge